Zeronical RICE  *v.*  STATE of Arkansas

CA CR 05-409                    219 S.W.3d 672

Court of Appeals of Arkansas
Opinion delivered December 7, 2005

312

*Dustin M. Dyer*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Chief Judge. The appellant in this criminal case was convicted of possession of crack cocaine and sentenced to twenty years' imprisonment. On appeal, he argues that the trial court erred in refusing to suppress the crack cocaine found on appellant's person because, *inter alia*, the search exceeded the permissible scope of a protective search. Alternatively, appellant contends that the evidence should have been excluded for failure to establish a sufficient chain of custody. We agree with his first point, and we reverse and remand.

In reviewing the trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Baird v. State*, 83 Ark. App. 392, 128 S.W.3d 459 (2003).

Viewed in light of this standard, the record shows that appellant was a passenger on a motor scooter driven by a twelve or thirteen-year-old juvenile. Officer Phillip Bailey stopped the vehicle and warned the juvenile that he was violating the law by not wearing a helmet and by carrying a passenger. Officer Bailey knew from past experience with appellant that appellant had been known to carry weapons and had been arrested for a terroristic act. He also noticed that appellant's demeanor was radically different from what it had been in their prior encounters. Whereas appellant had in the past been characteristically aggressive, belligerent, and uncooperative in his dealings with Officer Bailey, appellant on this occasion was nervous and overly friendly. Officer Bailey asked appellant if he would consent to a pat-down for weapons. Appellant consented and, while conducting the pat-down, Officer Bailey felt something in appellant's left coat pocket. Officer Bailey testified that, based on his training and experience, it was immediately apparent that the object that he felt in appellant's pocket was crack cocaine. Officer Bailey did not, however, explain what it was about the object's shape, feel, or contour that made the incriminating nature of the object immediately apparent to him.

The Fourth Amendment to the United States Constitution guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Fourth Amendment requires adherence to judicial processes, and searches conducted outside the judicial

process, without prior approval by judge or magistrate, are *per se* unreasonable – subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347 (1967). One such exception was delineated in *Terry v. Ohio*, 392 U.S. 1 (1968), which authorizes a police officer who has reason to believe that he is dealing with an armed and dangerous individual to conduct a reasonable search for weapons for the protection of the police officer. *Id.* at 27. This authority, however, is narrowly drawn, and such a warrantless protective search is strictly limited to that which is necessary for the discovery of weapons that might be used to harm the officer or others nearby; if the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

Appellant's argument for suppression is twofold: he argues that Officer Bailey had no right to search appellant after the stop had been concluded, and that the pat-down exceeded the permissible scope of a *Terry* search. We need not decide whether Officer Bailey was justified in searching appellant because, even assuming that the search was justified by circumstances or consent, the search clearly exceeded the scope of the *Terry* search to which appellant arguably consented.[1]

Deciding whether the pat-down exceeded the permissible scope of a *Terry* stop requires application of the "plain feel" doctrine enunciated in *Minnesota v. Dickerson, supra*, which holds that, if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. *Id.*, 508 U.S. at 375-76. Appellant argues that Officer Bailey's testimony that it was "immediately apparent" that

---

[1] Here Officer Bailey asserted that he searched appellant's person for weapons as a safety precaution and testified that he asked appellant "if he minded if I pat him down for weapons and he said, 'No.' " Under these circumstances, the scope of the consent would be limited to a pat-down search for weapons. *See Howe v. State*, 72 Ark. App. 466, 39 S.W.3d 467 (2001).

the object in appellant's pocket was crack cocaine is insufficient in the absence of any testimony concerning the factual basis for his knowledge.

There is a split of authority on this issue. Some courts have accepted a police officer's testimony that he was able to immediately recognize the incriminating character of crack cocaine by feel during a pat-down where it was supported by evidence that the officer had experience detecting the substance in that manner. *See, e.g., Huffman v. State,* 651 So. 2d 78 (Ala. Crim. App. 1994). Other courts, however, have held that a police officer's generalized statement that the incriminatory nature of the contraband was readily apparent was insufficient to establish that fact for purposes of the plain-feel exception where the officer did not testify concerning specific facts establishing his ability to recognize crack cocaine by touch. *See Jones v. State,* 343 Md. 448, 455, 682 A.2d 248, 252 (1996) ("it's not just a question of being an expert and coming in and saying the magic words"). Although we have not expressly ruled on this issue, our cases have employed the latter rationale. In *Howe v. State,* 72 Ark. App. 466, 472, 39 S.W.3d 467, 471 (2001), we noted that "[c]ompletely absent from [the officer's] testimony is any statement explaining what it was about the object's feel, shape, or contour that led him to believe that the object was contraband." In the absence of any such explanation in the present case, we hold that Officer Bailey's testimony does not permit a reasonable conclusion that the incriminating nature of the object in appellant's pocket was immediately apparent, and that the trial court therefore erred in denying appellant's motion to suppress. In light of our resolution of this issue, we need not address appellant's remaining arguments.

Reversed and remanded.

BIRD, J., agrees.

NEAL, J., concurs.

OLLY NEAL, Judge, concurring. I agree that this case should be reversed and remanded; however, I write separately to point out that when the minor driving the scooter was free to leave, the purpose of the stop had ended and Officer Bailey had no specific or particularized reason for the continued detention of appellant. Officer Bailey testified that he stopped the scooter on which appellant was a passenger because the driver, a juvenile, was not

wearing a helmet and should not have had a passenger. Pursuant to Ark. Code Ann. § 27-20-104(b)(1)(2) (Repl. 2004), "All passengers and operators of motorcycles and motor-driven cycles used upon the public streets and highways of this state shall be equipped with the following equipment under standards set forth by the Office of Motor Vehicle: (1) Protective headgear unless the person is twenty-one (21) years of age or older; and (2) Protective glasses, goggles, or transparent face shields." It is also unlawful for any person in the State of Arkansas under sixteen (16) years of age to carry another person as a passenger upon a motor-driven cycle. See Ark. Code Ann. § 27-20-110 (Repl. 2004).

Moreover, as part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks; however, after those routine checks are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable. Sims v. State, 356 Ark. 507, 157 S.W.3d 530 (2004). Under our criminal rules, once the legitimate purpose of a valid traffic stop is completed, a police officer must have a reasonable suspicion that the person is committing, has committed, or is about to commit a felony or a misdemeanor involving danger to persons or property, in order to continue to detain that person. See Ark. R. Crim. P. 3.1; Lilley v. State, 362 Ark. 436, 208 S.W.3d 785 (2005).

A person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. See Jefferson v. State, 349 Ark. 236, 76 S.W.3d 850 (2002); Lilley, supra. Under Rule 3.1, in order to further detain him and ask him questions, the officer is required to have reasonable suspicion. Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. Laime v. State, 347 Ark. 142, 155, 60 S.W.3d 464, 473 (2001) (quoting Smith v. State, 343 Ark. 552, 570, 39 S.W.3d 739, 750 (2001)).

Officer Bailey testified that he told the juvenile what he did wrong and sent him on his way. He testified that:

> As soon as I told the juvenile he was free to go, I turned and talked to Mr. Rice and asked him if he would consent to a pat down for weapons. . . . His demeanor was very uncharacteristic from my

prior dealings. He was very nervous and jittery and overly helpful, which is very uncharacteristic from dealings I've had with him in the past. . . .

Here, the purpose of the stop had ended, but the officer continued to detain appellant because of his friendly behavior. The officer articulated no specific or particularized reason for the further detention of appellant that was based on reasonable suspicion that appellant was involved in criminal activity. Therefore, once Officer Bailey told the juvenile he was free to leave, appellant should have been free to leave also, absent any specific particularized reasons of reasonable suspicion of criminal activity. Here, Bailey offered no suspicion of criminal activity afoot but only that appellant was known to have carried weapons on his person and that his demeanor was uncharacteristic.

Based on the foregoing reason, I respectfully concur in the reversal of this case.